Susan Combs (WSB #6-4023)
HOLLAND & HART LLP
25 S Willow St # 200
Jackson, WY 83001
Telephone:  (307) 734-4518
slcombs@hollandhart.com

Jose A. Ramirez (Admitted Pro Hac Vice)
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO  80111
Telephone:  303-290-1605
Fax:  303-383-5643
jramirez@hollandhart.com

Kathleen K. Custer (Admitted Pro Hac Vice)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO  80202
Telephone:  303-295-8060
Fax:  303-223-3398
KKCuster@hollandhart.com

Attorneys for Defendant
FEDEX FREIGHT, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NATIONAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 16-CV-174-R |
| | ) | |
| FEDEX FREIGHT, INC., C & M STAR | ) | |
| CORPORATION, CLARK OLSEN, MARTI | ) | |
| OLSEN, EDWARD BARROWES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT FEDEX FREIGHT, INC.'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page:**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES .............................................................................. ii

BACKGROUND ............................................................................................... 1

INTRODUCTION ............................................................................................. 2

UNDISPUTED MATERIAL FACTS ................................................................ 3

APPLICABLE LAW .......................................................................................... 9

STANDARD OF REVIEW FOR SUMMARY JUDGMENT .................................. 10

ARGUMENT ..................................................................................................... 10

1.  FXF IS AN INSURED UNDER THE POLICY .................................................. 10

    A.  FXF Was Not Acting As The Motor Carrier .......................................... 12

    B.  There Was No Lease Agreement Between FXF and C&M................................. 15

    C.  The Savings Clause Precludes Application of the Reciprocity Provision ............ 16

2.  NCC HAS A DUTY TO DEFEND FXF............................................................. 16

3.  NCC HAD A DUTY TO PROTECT ALL INSUREDS BEFORE PAYING POLICY
    LIMITS AND IMPROPERLY EXHAUSTED ITS POLICY LIMITS ............................... 17

4.  NCC BREACHED ITS OBLIGATION TO INDEMNIFY FXF......................................... 22

5.  NCC DOES NOT HAVE A RIGHT TO REIMBURSMENT ............................................ 22

CONCLUSION.................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................... 26

# TABLE OF AUTHORITIES

**Page(s):**

## CASES

*Act I, LLC v. Davis*,
   2002 WY 183, 60 P.3d 145 (Wyo. 2002) ...............................................10

*Adickes v. S.H. Kress and Co.*,
   398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)...........................10

*Am. States Ins. v. Ridco, Inc.*,
   1996 WL 33401184 (D. Wyo. 1996) ......................................................23

*Anglo-Am. Ins. Co. v. Molin*,
   670 A.2d 194 (Pa. Commw. Ct. 1995) ...................................................18

*Barber v. Gen. Elec. Co.*
   648 F.2d 1272 (10th Cir.1981) ...............................................................10

*Bay State Gas Co. v. Robert J. Devereaux Corp.*,
   2012 WL 5378084 (Mass. Super. Ct. 2012) ..........................................18

*Castlepoint Nat'l Ins. Co. v. Ins. Co. of Pa.*,
   2015 WL 2339092 (M.D. Penn. May 13, 2015)....................................11

*Category 5 Mgmt. Grp., LLC v. Nat. Cas. Ins. Co.*,
   480 Fed.Appx. 536 (11th Cir. 2012).......................................................12

*Comm'l Union Ins. Co. v. Stamper*,
   732 P.2d 534 (Wyo. 1987).........................................................10, 14, 15

*Diamond State Ins. Co. v. Ranger Ins. Co.*,
   47 F.Supp.2d 579 (E.D. Penn. May 17, 1999).......................................12

*Emp'rs Ins. Co. of Wausau v. Harleysville Preferred Ins. Co., et al.*,
   2016 WL 815277 (S.D.N.Y. Feb. 29, 2016)..........................................12

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   2008 WL 11334053 (D. Wyo. Aug. 6, 2008), aff'd, 618 F.3d 1153 (10th Cir.
   2010) .......................................................................................................23

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) ...........................................................9, 23

*First Wyo. Bank, N.A., Jackson Hole v. Cont'l Ins. Co.*,
   860 P.2d 1094 (Wyo.1993)......................................................................17

*Harris v. FedEx Nat'l LTL, Inc.*,
   760 F.3d 780 (8th Cir. 2014) ...................................................................13

*Hutchinson Oil Co. v. Federated Serv. Ins. Co.*,
   851 F.Supp. 1546 (D. Wyo.1994).............................................................17

*Indian Harbor Ins. Co. v. Valley Forge Ins. Group*,
   535 F.3d 359 (5th Cir. 2008) ...................................................................12

*Manders v. Okla. ex rel. Dep't of Mental Health*,
   875 F.2d 263 (10th Cir. 1989) .................................................................10

*Miles v. Cont'l Cas. Co.*,
   386 P.2d 720 (Wyo. 1963).......................................................................11

*Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co.*,
   959 S.W.2d 864 (Mo. App. 1997) ......................................................18, 20

*Pitt v. Tyree Org., Ltd.*,
   90 S.W.3d 244 (Tenn. Ct. App. 2002) .....................................................16

*Pride Transp. v. Cont'l Cas. Co.*,
   511 Fed. Appx. 347 (5th Cir. 2013)..........................................................18

*Progressive Cas. Ins. Co. v. Brown's Crew Car of Wyo., Inc.*,
   27 F. Supp. 2d 1288 (D. Wyo. 1998)........................................................12

*Res. Tech. Corp. v. Fisher Sci. Co.*,
   924 P.2d 972 (Wyo. 1996)........................................................................10

*Shell Oil Co. v. Nat'l Union Fire Ins. Co.*,
   52 Cal. Rptr. 2d 580 (Cal. App. 1996)......................................................18

*Shoshone First Bank v. Pacific Emp'rs Ins. Co.*,
   2 P.3d 510 (Wyo. 2000)...........................................................16, 17, 23, 24

*Smoral v. Hanover Ins. Co.*,
   322 N.Y.S.2d 12 (NY App. 1971) ............................................................18

*Williams v. GEICO Cas. Co.*,
   301 P.3d 1220 (Alaska 2013)..............................................................18, 19

*Wilson v. Hawkeye Casualty Co.*,
   215 P.2d 867 (Wyo. 1950)........................................................................11

## S<small>TATUTES</small>

49 U.S.C. 13901 and 13902 .............................................................................15

T.C.A. § 65-15-108.................................................................................................................16

## OTHER AUTHORITIES

49 C.F.R. § 376.2................................................................................................................15

13 Appleman, Insurance Law and Practice, § 7402 (1943)............................................11

2 Couch on Ins. 22:31................................................................................................11, 15

Fed.R.Civ.P. 56(c)...........................................................................................................10

Restatement (Second) of Conflict of Laws, Section 188................................................10

Defendant FedEx Freight, Inc. ("FXF"), through its counsel, files its Brief in Support of

Partial Motion for Summary Judgment.

## BACKGROUND

In April 2015, Mr. Edward Barrowes, a driver for and employee of C & M Star

Corporation ("C&M") fell asleep at the wheel of a C&M owned tractor, causing the death of

Aleksandr Kozak. At the time of the accident, C&M's tractor was pulling two FXF trailers

pursuant to a Master Transportation Services Agreement ("MTSA") between C&M and FXF. In

the MTSA, C&M agreed to procure commercial automobile insurance on behalf of FXF, and

also agreed that C&M, not FXF, was acting as the motor carrier. Indeed, the MTSA required

C&M to operate under its own U.S. Department of Transportation ("USDOT") authority and

number. Pursuant to the MTSA, C&M obtained a commercial automobile policy from National

Casualty Company ("NCC") (the "Policy") and added FXF to the Policy as a designated insured.

The Policy NCC issued to C&M is the subject of this lawsuit.

When Mr. Kozak's representative named FXF as a defendant in a wrongful death lawsuit

arising out of the accident (the "Underlying Tort Suit"), FXF requested NCC provide it a defense

under the Policy. NCC accepted the defense, but failed to treat FXF like the other insureds on the

Policy, and disputed FXF qualified as an insured based on the Policy's "reciprocity provision,"

which requires "motor carriers" to comply with certain requirements to qualify as an insured.

Despite accepting the defense, NCC failed to include FXF in the settlement that released all other

insureds and exhausted the Policy limits, over FXF's repeated objections. NCC then notified

FXF that its duty to defend was terminated and reserved its right to seek reimbursement of

defense costs paid on FXF's behalf, even though the Policy contains no right to reimbursement.

NCC filed the instant lawsuit and sought declarations that: (a) FXF does not qualify as an

insured under the Policy; (b) coverage for FXF terminated when NCC exhausted its Policy limits

in its settlement of the other insureds; and (c) NCC is entitled to reimbursement from FXF for the cost of defense NCC provided to FXF. In response, FXF asserted counterclaims against NCC for breach of contract and bad faith breach of insurance contract, and requested the court declare: (a) FXF is as an "insured" under the Policy; (b) FXF is entitled to full reimbursement from NCC for any defense costs and expenses it has incurred in defending the Underlying Tort Suit; (c) FXF is entitled to a continuing defense from NCC in the Underlying Tort Suit, notwithstanding the purported exhaustion of its Policy limits; (d) NCC is required to indemnify FXF for its settlement in the Underlying Tort Suit, notwithstanding the purported exhaustion of its Policy limits; (e) the Policy does not permit NCC to seek reimbursement from FXF for defense costs and expenses; and (f) no Policy provisions preclude insurance coverage for FXF relating to the Underlying Tort Suit.

## <u>INTRODUCTION</u>

FXF is entitled to summary judgment in its favor both on NCC's First, Third and Fourth Claims for Relief,[1] and partial summary judgment in its favor on its First and Third Counterclaims. First, FXF qualifies as an insured under NCC's Policy because the reciprocity provision is inapplicable and there are no other provisions in the Policy that preclude coverage. Second, because FXF qualifies as an insured, NCC had a duty to defend FXF in the Underlying Tort Suit. Third, NCC owed all its insureds a duty to treat them fairly and equally, and NCC breached this obligation when it settled the Underlying Tort Suit on behalf of all of the other insureds except FXF, and improperly exhausted the Policy limits. As such, NCC's duty to defend and indemnify continued after NCC exhausted the Policy limits, and NCC breached its ongoing duty by refusing to indemnify FXF. Last, despite NCC's claim to the contrary, it does not have a right to reimbursement of the costs it paid on FXF's behalf to defend the Underlying Tort Suit

---

[1] NCC's Second Claim for Relief is not asserted against FXF.

because Wyoming does not allow reimbursement where, as here, the Policy is silent on reimbursement.

## UNDISPUTED MATERIAL FACTS

### THE MTSA

1.      On March 21, 2014, FXF and C&M entered into the MTSA. The MTSA provided, in part, that FXF may from time to time desire to engage C&M to perform certain transportation services described in the MTSA. Ex. 1 at FedEx0000166.[2]

2.      The MTSA required C&M to procure "Commercial Automobile Liability Insurance covering Carrier's owned, non-owned and hire vehicles, naming FedEx…as additional insureds…including bodily injury and property damage endorsements, with a combined single limit of not less than $1,000,000." *Id.* at FedEx168 and FedEx181.

3.      The MTSA further required C&M to defend, indemnify, and hold harmless FXF against all claims, except for those claims arising from FXF's negligence or wrongful acts. *Id.* at FedEx168.

4.      The MTSA also defined C&M as the "carrier" and required C&M, at its sole cost and expense, to procure and maintain all licenses and permits required by local, state, or federal authorities, and to comply with all applicable laws, ordinances, codes, rules and regulations, including those of the USDOT. *Id.* at FedEx167-168.

5.      Per the MTSA, C&M was not required to use FXF's mark on its tractor when it hauled freight for FXF, and neither FXF's name, logo, or USDOT numbers appeared on C&M's tractor or on FXF's trailers. *Id.* at FedEx166; Ex. 2 at FedEx476; Ex. 3 at 52:12-25.

---

[2] References to bates numbers are shortened hereafter to remove extra zeros.

3

## THE POLICY

6.      NCC issued a commercial trucking liability insurance policy to C&M numbered

LT0022924, for the policy period March 9, 2015 through March 9, 2016 (i.e. the Policy). Ex. 4.

7.      The Policy listed C&M as the named insured. *Id.* at FedEx7.

8.      Section II.A.1. of the Policy defines "Who is an Insured" to include:

> c.      The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.
>
> ****
>
> e.      Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at FedEx62-63.

9.      This section further states that none of the following is an "insured":

> Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
>
> (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.
>
> (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.
>
> However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

*Id.*

10.     The Policy defines "Auto" to include a "trailer" or "semitrailer." *Id.* at FedEx32.

11.     The Policy contains a schedule of covered power units including a tractor

Freightliner bearing VIN 1FUJGLDR2BSAY0012. *Id.* at FedEx117.

12.     The Policy includes endorsement CA 20 48 titled "Designated Insured for Covered Autos Liability Coverage," which names FXF as an "insured." *Id.* at FedEx77.

13.     Nowhere in the Policy is NCC provided a right to reimbursement of defense costs, as NCC itself has admitted.  Ex. 3 at 53:13-18; *see also* Ex. 4.

14.     C&M provided FXF with a Certificate of Liability Insurance for the Policy that states, "FedEx Freight Inc is additional insured in regards to auto liability, general liability, and cargo as their interest may appear. Endorsement requested from company." Ex. 1 at FedEx183.

15.     NCC's underwriting manual states, "A person or organization—typically a customer, freight broker, leasing company, or shipper—may request that our insured name them as an Additional Insured on our policy in order to protect their assets." Ex. 5 at NCC2930. It further states, "We can do so by the use of <u>CA 20 48</u>  Designated Insured endorsement." *Id.*

16.     NCC understood this manual "reiterates what the need is in the market and…the common request is they're saying, hey, we want to be named as an additional insured to protect our assets." Ex. 6 at 54:19-25.

## THE ACCIDENT

17.     On April 22, 2015, pursuant to the MTSA, C&M was hauling two FXF trailers owned by FXF on I-80. ECF No. 1 at ¶¶ 10, 12 and ECF No. 21 at ¶¶ 10, 12.

18.     C&M owned the tractor that was hauling the FXF trailers, and C&M employed Edward Barrowes, the tractor driver.  Ex. 2 at FedEx479; ECF No. 1 at ¶ 10 and ECF No. 22 at ¶ 10.

19.     C&M's driver fell asleep at the wheel and crashed into another tractor trailer resulting in the death of Aleksandr Kozak. Ex. 2 at ¶ 14 and Ex. 7 at ¶ 28.

20.     At the time of the accident, C&M was the motor carrier. Ex. 2 at ¶ 13.; Ex. 7 at ¶ 22; Ex. 3 at 57:2-4.

21.     At the time of the accident, FXF was the shipper. Ex. 2 at ¶ 13; Ex. 7 at ¶¶ 23-24.

22.     NCC's underwriting representative admitted that "NCC recognized that as part of C&M operations it would be moving freight for a shipper" and further testified that:

> A shipper is more of a logistics operation; they don't actually
> control the commodity. They designate that this load is going here,
> this load is going there. The motor carrier, difference would be that
> they actually are, have care, custody and control over that
> particular commodity for a specified period of time as it's going
> from point A to point B.  Ex. 6 at 54:6-18.

## UNDERLYING TORT SUIT IS FILED

23.     On December 3, 2015, Katsiaryna Krauchanka, the wrongful death representative of Aleksandr Kozak, filed a Complaint in the District Court for the Third Judicial District within and for Sweetwater County, Wyoming (i.e. the Underlying Tort Suit): *Katsiaryna Krauchanka, Wrongful Death Rep. of Aleksandr M. Kozak, deceased, v. C&M Star Corp.; Clark Olsen; Marti Olsen; FedEx Freight, Inc.; and Edward Barrowes*, Civil Action File No. 15-819-L. *See* ECF No. 1 at ¶ 20 and ECF No. 21 at ¶ 20.

24.     The Underlying Tort Suit alleged that FXF was vicariously liable for C&M's negligence. Ex. 2 at FedEx481 and Ex. 7 at ¶ 64.

## NCC'S INVESTIGATION AND HANDLING OF FXF'S CLAIM

25.     On February 11, 2016, FXF tendered its defense for the Underlying Tort Suit to NCC. Ex. 8.

26.     On March 17, 2016, NCC accepted FXF's tender and agreed to provide a defense. Ex. 9. NCC also told FXF that it would send a separate letter and copy of the Policy to FXF. *Id.*

27.     In March 2016, NCC created a second claim file for the handling of FXF's defense and assigned it to Amy Huston. Ex. 3 at 20:11-14; Ex. 9.

6

28.     Ms. Huston testified that she never conducted an investigation to determine FXF's liability. Ex. 10 at 12:7-9; 26:8-11; 29:22-30:1; 35:12-36:13. Instead, she relied on FXF's defense counsel to conduct the investigation. *See, e.g., id.* at 10:19-25, 12:7-24, 16:7-10, 20:2-10, 28:18-22; 35:6-36:13.

29.     NCC's original claim file was assigned to William Benson, but he did not complete an investigation into FXF's liability despite identifying that FXF was a potential co-defendant and recommending that FXF's liability be assessed. Ex. 11 at NCC1112-1113; Ex. 3 at 78:4-13; Ex. 12 at 16:14-18; 28:18-23.

30.     Mr. Benson testified that until FXF tendered its defense, no one from NCC was tasked with assessing FXF's liability. Ex. 12 at 17:16-19.

31.     On April 22, 2016, a month after accepting the defense, NCC sent FXF a reservation of rights letter, asserting that FXF may not qualify as an insured under Policy Section II.A.1.(1) "Who is an Insured" if FXF is a "motor carrier" for hire and is either self-insured or does not provide primary auto liability coverage for autos that are leased to FXF. NCC also reserved its rights to raise other coverage defenses. NCC did not state that it would seek reimbursement of defense costs. Ex. 13.

32.     On April 22, 2016, NCC sent a second letter to FXF advising FXF of Ms. Krauchanka's April 6, 2016 offer to settle her claims against C&M and Mr. Barrowes in exchange for NCC's payment of its Policy limit of $1,000,000, or alternatively settle her claims against C&M, Mr. Barrowes, and Mr. and Mrs. Olsen for the $1,000,000 Policy limit plus a payment of $89,383.95 from Mr. and Mrs. Olsen. Ex. 14. The letter advised FXF that NCC was considering the settlement offers but that neither offer included a release or dismissal of FXF. *Id.* at FedEx210.

33.     FXF responded to NCC's April 22, 2016 letters on April 27, 2016. Ex. 15 at FedEx267-268. FXF notified NCC that FXF was an insured under the Policy and that FXF had equal rights to a defense and indemnification under the Policy as any other insured. *Id.* FXF objected to NCC's intent to settle and urged NCC to reject any settlement offer that did not release FXF or that would leave FXF without a defense. *Id.* at FedEx267. FXF further raised serious concerns that NCC had failed to include FXF in settlement discussions and failed to advocate on FXF's behalf to be included in a release. *Id.* at FedEx268.

34.     On April 28, 2016, Ms. Studer, who did not represent FXF and only represented NCC's other insureds, asked plaintiff's counsel, "I need to know whether your client would be willing to include Fed Ex in the release under the terms you set forth. Please advise." Ex. 16 at NCC16. Plaintiff's counsel responded, "No, Plaintiff will want the Settlement Agreement and Release to make it clear that Plaintiff reserves all claims against FedEx." *Id.*

35.     NCC notified FXF of plaintiff's response, and FXF then sent NCC another letter on April 29, 2016 explaining why FXF qualified as an insured, requesting a copy of the Policy that NCC had promised to send FXF in March when it accepted the defense, and again objecting to NCC's handling of FXF's claim, including NCC's failure to include FXF in the settlement negotiations and its failure to investigate FXF's liability. Ex. 17 at FedEx147-148. FXF also told NCC that C&M owed FXF a contractual duty to defend, indemnify, and hold harmless FXF, and that if NCC settled on behalf of the insureds and exhausted its Policy limits without including FXF, NCC's settlement could create liability for C&M to FXF. *Id.*

36.     On May 1, 2016, NCC provided FXF with a copy of the Policy and clarified that the settlement offers did not extend to FXF. Ex. 18.

37.     On May 3, 2016, FXF further explained to NCC why the "reciprocity provision" was inapplicable, and why FXF qualified as an insured under the Policy, and also requested that NCC confirm whether NCC had rejected the settlement offers. Ex. 19 at FedEx131.

38.     Almost two weeks later on May 16, 2016, NCC notified FXF that it had accepted Ms. Krauchanka's settlement demand. Ex. 20.

39.     NCC testified it excluded FXF from the settlement because NCC believed FXF had a good case and would likely not be found liable. Ex. 3 at 76:7-77:18.

40.     This reasoning or justification is found nowhere in the claim file NCC produced in this case. However, Ms. Huston, Mr. Benson, and NCC's corporate representative testified that they would have expected NCC to document its liability determination in the claim file. Ex. 10 at 17:2-11, 21:24-22:2, 37:15-18; Ex. 12 at 36:13-37:7, 41:2-13; Ex. 3 at 24:14-25:3, 59:8-16, 75:4-11, 76:18-77:18.

## FXF LITIGATES AND SETTLES THE UNDERLYING TORT SUIT

41.     FXF continued litigating the Underlying Tort Suit and received a favorable ruling on its motion for summary judgment. Ex. 2 at FedEx474-88. The order concluded FXF was acting as the shipper, not the motor carrier, at the time of the accident. *Id.* at FedEx485.

42.     The plaintiff filed a notice of appeal of the order three days later. Ex. 21.

43.     FXF and the plaintiff settled the lawsuit,[3] and the Tenth Circuit dismissed the plaintiff's appeal on February 7, 2018. Ex. 22. NCC did not indemnify FXF in the settlement.

## <u>APPLICABLE LAW</u>

Because NCC filed this case in Wyoming, Wyoming's choice of law principles dictate what state's law the court applies to interpret the Policy. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010). If there is no conflict between the laws of the

---

[3] The settlement agreement is not included as an exhibit because it is confidential.

potentially implicated states' laws, then Wyoming law governs. *See Act I, LLC v. Davis*, 2002 WY 183, ¶ 10, 60 P.3d 145, 149 (Wyo. 2002). Wyoming utilizes the RESTATEMENT (SECOND) OF CONFLICT OF LAWS to determine which states' law applies. *See Res. Tech. Corp. v. Fisher Sci. Co.,* 924 P.2d 972, 975 (Wyo. 1996) (citing Section 188 of the Restatement (Second)). Although certainly not definitive, the place of contracting, contract negotiation, and domicile of the parties suggest that Utah law would apply in the event of a conflict. However, because there is not a conflict between Utah and Wyoming with respect to the law applicable here, Wyoming substantive law governs this case.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden to show the absence of a genuine issue of any material fact. *See generally Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden then shifts to the nonmoving party to establish the existence of a disputed issue of fact material to the outcome of the case. *See Manders v. Okla. ex rel. Dep't of Mental Health,* 875 F.2d 263, 265 (10th Cir. 1989). In deciding a motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *See Barber v. Gen. Elec. Co.* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### ARGUMENT

### 1.    FXF IS AN INSURED UNDER THE POLICY

The first question for the court is whether FXF is an insured under the Policy. The words in insurance contracts are "given their common and ordinary meaning." *Comm'l Union Ins. Co.*

*v. Stamper*, 732 P.2d 534, 539 (Wyo. 1987) (quoting 13 Appleman, Insurance Law and Practice, § 7402 (1943)). "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, ***viewed in the light of what the parties must reasonably have intended*.**" *Id.* (quoting *Wilson v. Hawkeye Casualty Co.*, 215 P.2d 867, 873-875 (Wyo. 1950) (emphasis added)). "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance." *Id.* (quoting *Miles v. Cont'l Cas. Co.,* 386 P.2d 720, 722 (Wyo. 1963)). "... [W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted." *Id.* (quoting *Wilson*, 215 P.2d at 867)). Moreover, policy exclusions or limitations are construed narrowly. 2 Couch on Ins. 22:31.

The "Who Is An Insured" section of the Policy defines an "insured" to include the "owner…from whom you hire or borrow…a covered 'auto' that is a 'trailer' while the 'trailer' is connected to another covered 'auto' that is a power unit, or, if not connected, is being used exclusively in your business," and "[a]nyone liable for the conduct of an "insured" described above but only to the extent of that liability." Ex. 4 at FedEx063. "Auto" means "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." *Id.* at FedEx72. "'Trailer' includes a semitrailer or a dolly used to convert a semitrailer into a trailer." *Id.* at FedEx75.

FXF qualifies as an insured under these provisions. First, because FXF owned the trailer attached to C&M's covered auto that was a power unit, FXF is an insured under subpart 1.c. *See Castlepoint Nat'l Ins. Co. v. Ins. Co. of Pa.*, 2015 WL 2339092 at *7 (M.D. Penn. May 13, 2015) (concluding provision covers "the owner *or* anyone else from whom [the named insured] hires or borrows a covered auto, in the disjunctive" and not the conjunctive) (emphasis in original). The

Underlying Tort Suit also alleged FXF was vicariously liable for C&M's negligence. Ex. 7 at

FedEx200-201. Because it is undisputed C&M is an insured, and the Underlying Tort Suit

alleged FXF was vicariously liable for C&M's actions,[4] FXF qualifies as an insured under

paragraph e. *See e.g.*, *Emp'rs Ins. Co. of Wausau v. Harleysville Preferred Ins. Co., et al.*, 2016

WL 815277 (S.D.N.Y. Feb. 29, 2016) (concluding provision includes vicarious liability);

*Category 5 Mgmt. Grp., LLC v. Nat. Cas. Ins. Co.*, 480 Fed.Appx. 536, 538 (11th Cir. 2012)

(same); *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579, 585 (E.D. Penn. May 17,

1999) (same); and *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 363 (5th

Cir. 2008) (same); *see also Progressive Cas. Ins. Co. v. Brown's Crew Car of Wyo., Inc.,* 27 F.

Supp. 2d 1288, 1292–93 (D. Wyo. 1998) (where parties argued the language "anyone liable for

the conduct of an insured…" requires a principal/agent relationship, the court concluded that

there was no principal/agent relationship, but did not limit the provision to principals/agents).

NCC, however, argues FXF is not an insured because of the "reciprocity provision." *See*

Ex. 4 at FedEx63; Exs. 13 and 20. This provision is inapplicable because FXF was not acting as

the "motor carrier" in its relationship with C&M, and there was no lease agreement between FXF

and C&M. Even assuming FXF was the motor carrier and the parties had a lease agreement, the

reciprocity provision is still inapplicable because of the savings clause.

A.   **FXF Was Not Acting As The Motor Carrier**

For the "reciprocity provision" to apply, FXF must qualify as a "motor carrier" under the

Policy. Per the Policy, "motor carrier" means "a person or organization providing transportation

by 'auto' in the furtherance of a commercial enterprise." Ex. 4 at FedEx74. In each tractor-trailer

transaction, there is only one motor carrier and one shipper. As NCC's corporate representative

---

[4] The court in the Underlying Tort Suit ultimately ruled that FXF was not vicariously liable for
C&M's negligence. Ex. 2. The plaintiff in the Underlying Tort Suit appealed the ruling, but the
parties settled before the appeal was decided. Ex. 21.

acknowledged, "The motor carrier is who has held themselves out to haul the goods for hire and the shipper is typically the person who is shipping the goods." Ex. 3 at 48:24-49:6. Also, as the court found in the Underlying Tort Suit, FXF provided the trailer, and was thus acting as the shipper, not the motor carrier. Ex. 2 at FedEx485 (citing *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 783-85 (8th Cir. 2014)). NCC also admitted that in the contract between C&M and FXF, C&M was acting as the motor carrier, not FXF. Ex. 3 at 57:2-4.

Nevertheless, NCC insists that because FXF holds itself out as a motor carrier in other situations, it meets the Policy's motor carrier definition and is thus subject to the reciprocity provision. Ex. 3 at 49:14-25. NCC's interpretation, however, is inconsistent with the parties' intent and undermines the general purpose of the Policy. In the MTSA, C&M agreed to be the "motor carrier." Ex. 1 at FedEx156-189. C&M was not required to use FXF's mark on its tractor when it hauled freight containers for FXF; neither FXF's name or logo nor FXF's USDOT number appeared on C&M's tractor; and FXF's USDOT number was not on the FXF trailers. *Id.* at FedEx166; Ex. 2 at FedEx476; Ex. 3 at 52:12-25. Moreover, the MTSA required C&M to carry commercial auto liability insurance naming FXF as an insured with a $1 M limit of liability. Ex. 1 at FedEx168 and FedEx181. The MTSA further required C&M to indemnify, defend, and hold harmless FXF against all claims, except those arising from FXF's negligence or wrongful acts. *Id.* at FedEx168.

Pursuant to the MTSA, C&M obtained the Policy, and NCC issued the CA 20 48 endorsement titled "Designated Insured for Covered Autos Liability Coverage," naming "FedEx Freight Corporation" as a "designated insured." Ex. 4 at FedEx77. C&M also provided FXF with a Certificate of Liability Insurance for the Policy, stating, "Fed Ex Freight Inc is additional insured in regards to auto liability, general liability, and cargo..." Ex. 1 at FedEx183. Moreover, NCC's underwriting manual states, "A person or organization—typically a customer, freight

broker, leasing company, or shipper—may request that our insured name them as an Additional

Insured on our policy in order to protect their assets." Ex. 5 NCC2930. NCC understood this

statement "reiterates what the need is in the market and…the common request is they're saying,

hey, we want to be named as an additional insured to protect our assets." Ex. 6 at 54:19-25. The

manual further states, "We can do so by the use of CA 20 48  Designated Insured endorsement."

*Id.* NCC's underwriting representative admitted that "NCC recognized that as part of C&M

operations it would be moving freight for a shipper" and further testified that:

> A shipper is more of a logistics operation; they don't actually
> control the commodity. They designate that this load is going here,
> this load is going there. The motor carrier, difference would be that
> they actually are, have care, custody and control over that
> particular commodity for a specified period of time as it's going
> from point A to point B.

Ex. 6 at 54:6-18.

The MTSA, Certificate of Insurance, NCC's testimony, and NCC's underwriting manual

all support that the parties' intended to insure C&M as the motor carrier and provide coverage to

FXF as the shipper. That FXF acts as a motor carrier in other situations is irrelevant, and NCC's

proposed construction would "thwart the general object of the insurance." *Comm'l Union Ins.*

*Co.*, 732 P.2d at 539. The parties reasonably intended that the insurance for the party acting as

the motor carrier in the transaction, here C&M, would provide primary coverage for losses. In

the loss at issue in the Underlying Tort Suit, C&M was acting as the motor carrier and FXF was

acting as the shipper. To require FXF to comply with the "reciprocity provision" when it was not

acting as the motor carrier would undermine the parties' reasonable expectations.

NCC may contend that because the Policy's definition of "motor carrier" is broad and is

not limited to who was acting as the motor carrier in the specific situation that caused the loss,

FXF meets the motor carrier definition. But, as noted above, such an interpretation thwarts the

very purpose of the Policy. It makes little sense to require FXF to comply with the reciprocity

provision, which applies to motor carriers, when FXF was acting solely as the "shipper" and not

as the motor carrier at the time of the accident. Where the Policy is fairly susceptible to more

than one interpretation, "the one favorable to the insured will be adopted," *id*., and provisions

limiting coverage must be narrowly construed against the insurer. 2 Couch on Ins. 22:31. These

rules of construction dictate that for the reciprocity provision to apply, the entity seeking

coverage must have been acting as the motor carrier at the time of the accident. Because FXF

was the shipper, and not the motor carrier, the reciprocity provision is inapplicable, and FXF thus

qualifies as an insured under the Policy.

**B.     <u>There Was No Lease Agreement Between FXF and C&M</u>**

In addition to not qualifying as a motor carrier, the reciprocity provision is further

inapplicable because FXF and C&M did not have a lease agreement. Paragraph 1(b) of the

reciprocity provision only applies when the "autos" are leased to FXF. The word "lease" does

not appear in the MTSA and there is no language to suggest FXF leased the tractor from C&M.

The Federal Motor Carrier Safety Regulations, 49 C.F.R. § 376.2, define "lease" as "a contract

or arrangement in which the owner grants the use of equipment, with or without driver, for a

specified period to an authorized carrier for use in the regulated transportation of property, in

exchange for compensation." 49 C.F.R. § 376.2(e). The same regulation defines "authorized

carrier" as "a person or persons authorized to engage in the transportation of property as a motor

carrier under the provisions of 49 U.S.C. 13901 and 13902." *Id.* at § 376.2(a). Finally, the

regulation defines "shipper" as "a person who sends or receives property which is transported in

interstate or foreign commerce." *Id.* at § 376.2(k). Therefore, a lease is between a motor carrier

and an authorized carrier, not a shipper. Here, there was no lease and FXF was acting as a

shipper. Accordingly, the reciprocity provision does not apply.

### C.    The Savings Clause Precludes Application of the Reciprocity Provision

Last, even if FXF were the motor carrier *and* there was a lease between C&M and FXF, the savings clause precludes application of the reciprocity provision. The savings clause states: "However, Paragraph (1) above does not apply if you have leased an 'auto' to the for-hire 'motor carrier' under a written lease agreement in which you have held that 'motor carrier' harmless." Ex. 4 at FedEx63. In section 4 of the MTSA, C&M specifically agreed to indemnify, defend and hold harmless FXF "from and against any and all claims, actions, losses, damages, expenses, judgments and costs (including attorneys' fees and costs) resulting from or arising out of [C&M's] performance of the Services under this Agreement, including, but not limited to…(iii) any loss of, damage to or destruction of property and vehicles, or from the death of or injury to any person, except to the extent arising from FedEx's negligence or wrongful acts."[5] Ex. 1 at FedEx168. Therefore, even if FXF was acting as the motor carrier and leased the tractor from C&M, because the MTSA requires C&M to hold FXF harmless, the reciprocity provision does not apply, and FXF is an insured under the Policy.

In sum, the court should declare FXF is an insured, and should enter summary judgment in FXF's favor on NCC's First Request for Relief.

### 2.    NCC HAS A DUTY TO DEFEND FXF

Because FXF qualifies as an insured, the next question is whether the allegations in the Underlying Tort Suit trigger NCC's duty to defend. The court analyzes "the duty to defend by examining the facts alleged in the complaint that the claim is based upon" – the duty is not based upon "the ultimate liability of the insurer to indemnify the insured." *Shoshone First Bank v.*

---

[5] The MTSA contains a Tennessee choice of law provision. Ex. 1 FedEx0000171. Tennessee courts generally enforce indemnification provisions in contracts. *Pitt v. Tyree Org., Ltd.*, 90 S.W.3d 244 (Tenn. Ct. App. 2002) (citation omitted). The indemnity agreement also complies with Tennessee's indemnification statute pertaining to transportation contracts, as the agreement does not require C&M to indemnify FXF for its own negligence. *See* T.C.A. § 65-15-108.

*Pacific Emp'rs Ins. Co.*, 2 P.3d 510, 513 (Wyo. 2000) (citing *First Wyo. Bank, N.A., Jackson Hole v. Cont'l Ins. Co.*, 860 P.2d 1094, 1097 (Wyo.1993)). "The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage." *Id.* (citing *Hutchinson Oil Co. v. Federated Serv. Ins. Co.*, 851 F.Supp. 1546, 1553 (D. Wyo.1994)).

The allegations in the Underlying Tort Suit fall within the Policy's coverage. NCC assumed the "duty to defend" FXF, its insured, against any "suit" seeking "damages because of "bodily injury" . . . caused by an 'accident.'" Ex. 4 at FedEx62-63. The Underlying Tort Suit alleges that on April 21, 2015, a tractor-trailer operated by C&M and hauling FXF's trailer collided with another tractor-trailer, killing Aleksandr M. Kozak. Ex. 7 at FedEx191-202. NCC does not dispute that the tractor at issue is a covered "auto" under the Policy—the C&M tractor involved in the accident was a Freightliner, VIN Number 1FUJGLDR2BSAY0012, which is listed on the "Schedule of Covered Autos" in the Policy. Ex. 23 at NCC430; Ex. 7 at FedEx194; Ex. 4 at FedEx55. The covered tractor was pulling two FXF trailers. ECF No. 1 at ¶¶ 10, 12; ECF No. 21 at ¶¶ 10, 12. The tractor and trailers are thus covered autos under the Policy. Moreover, the accident occurred on April 21, 2015, during the Policy period. Accordingly, because the Underlying Tort Suit alleges bodily injury caused by an accident resulting from the ownership, maintenance or use of a covered "auto," NCC has a duty to defend FXF, an insured under the Policy. The court should thus declare as a matter of law that NCC has a duty to defend FXF.

**3.     NCC HAD A DUTY TO PROTECT ALL INSUREDS BEFORE PAYING POLICY LIMITS AND IMPROPERLY EXHAUSTED ITS POLICY LIMITS**

NCC seeks a declaration from the court that when NCC settled the Underlying Tort Suit and paid the $1,000,000 Policy limit solely on behalf of C&M, Clark Olsen, Marti Olsen, and Edward Barrowes, but did not obtain a release for FXF, NCC effectively terminated its

obligation to defend and indemnify FXF. *See* ECF No. 1 at 9. While it is undisputed that NCC exhausted the Policy limits, this does not end the analysis. Rather, the court must determine whether NCC properly exhausted the limits.

There is a split in authority regarding an insurer's obligations where, as here, there are multiple insureds and only one policy limit. Wyoming has not yet had occasion to decide this issue.[6] Three jurisdictions hold that where there are multiple insureds, the proper course is for the insurer to protect all insureds and seek a settlement for all insureds. *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1226 (Alaska 2013); *Shell Oil Co. v. Nat'l Union Fire Ins. Co.*, 52 Cal. Rptr. 2d 580, 586 (Cal. App. 1996); *Smoral v. Hanover Ins. Co.*, 322 N.Y.S.2d 12,14 (NY App. 1971). If the insurer is unable to secure a settlement on behalf of all insureds, the insurer cannot simply pay the full amount of policy limits for one or some of its insureds and leave the other insureds exposed. Rather, the insurer must seek a release of all insureds, and if the insurer is unsuccessful in obtaining a release of all insureds, the insurer's recourse is to file a declaratory judgment action to determine what coverage is owed. These cases hold that seeking a settlement to the benefit of only one insured is a breach of the insurer's obligations to the other insureds.

Other jurisdictions that have addressed this issue hold that an insurer may exhaust policy limits in settlement on behalf of one insured, even if doing so leaves another insured without a defense or sufficient limits to satisfy a judgment, ***but only if the insurer does so reasonably and in good faith***. *See, e.g., Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co.*, 959 S.W.2d 864 (Mo. App. 1997); *Anglo-Am. Ins. Co. v. Molin*, 670 A.2d 194 (Pa. Commw. Ct. 1995); *Pride Transp. v. Cont'l Cas. Co.*, 511 Fed. Appx. 347, 348 (5th Cir. 2013) (applying Texas law); *Bay State Gas Co. v. Robert J. Devereaux Corp.*, 2012 WL 5378084 (Mass. Super. Ct. 2012) (while insurers

---

[6] Utah has not addressed this question, either.  There is thus no conflict between Wyoming and Utah law.

have no absolute right to settle on behalf of less than all insureds, they may do so if they act in good faith and in the best interests of all insureds by providing as much protection to the insureds as reasonably possible).[7] Thus, even if the insurer is only able to settle on behalf of some but not all insureds, the insurer must still act in good faith and make reasonable efforts to try to include all insureds in a settlement.

The former view is the better reasoned approach and is more consistent with an insurer's obligations to its insureds. As the court explained in *Williams* when it adopted this standard:

> An insurer has a duty to defend its insureds; seeking a settlement to the benefit of one insured while leaving others open to liability could cause unfairness. Further, the [] approach avoids a potential bad faith claim by an insured who was unprotected and efficiently adjudicates the rights and duties of the insurer and the insured.

301 P.3d at 1226. Thus, this approach protects all insureds because one insured is not favored over the others. It also protects the insurer from bad faith claims, and at the same time, does not leave the insurer without recourse when it has multiple insureds and insufficient coverage to settle on behalf of them all because it can seek a declaratory judgment as to coverage.

Regardless of which standard the court applies, NCC breached its obligations to FXF, and FXF is entitled to summary judgment on NCC's Third Claim for Relief. NCC had multiple insureds, settled as to less than all of them, and did not seek a determination at that time of its rights and obligations. Per the law in Alaska, New York, and California, this violates NCC's contractual obligations and duty of good faith to FXF as a matter of law, and means that even though NCC exhausted the Policy limit, the exhaustion was improper and NCC still owed FXF duties under the Policy.

---

[7] Seven states have taken this view – Florida, Illinois, Louisiana, Massachusetts, Missouri, Pennsylvania and Texas.  The forty other states have not yet addressed this issue.

Even applying the latter standard, the undisputed facts establish NCC breached its obligations to FXF when it excluded FXF from the settlement. For example, in *Millers*, 959 S.W.2d 864, the insurer made multiple attempts to include all insureds in the settlement. When the plaintiff in that case excluded one of the two insureds from a settlement demand, the insurer countered with an offer that included both insureds. Then, after the plaintiff rejected that offer, the insurer "again conveyed an offer of settlement to the underlying plaintiffs in exchange for a full and final release as to both" insureds. *Id.* at 866. Under those circumstances, and where the excluded insured agreed the settlement was reasonable, the court concluded the insurer did not breach its duty of good faith. *Id.*

Here, FXF tendered its defense to NCC on February 11, 2016, and NCC accepted the defense on March 17, 2016. Exs. 8 and 9. From that point forward, NCC was obligated to act in good faith towards FXF. On April 6, 2016, NCC received a policy limit settlement demand from the plaintiff in the Underlying Tort Suit set to expire on May 2, 2016. Ex. 14 at FedEx211-212. The demand did not include FXF. *Id.* Despite knowing that the clock was ticking on the demand, NCC did not notify FXF immediately and waited over two weeks to notify FXF of the demand. Ex. 14  at FedEx209-210.

After NCC notified FXF of the demand, NCC made virtually no effort to try to include FXF in the settlement or in the negotiations, and ignored FXF's repeated objections to NCC's attempts to settle the Underlying Tort Suit without including FXF. *See* Ex. 15 at FedEx267-268, Ex. 17 at FedEx147-148, and Ex. 19 at FedEx131. On April 28, 2016, Ms. Studer, who did not represent FXF and only represented NCC's other insureds, emailed plaintiff's counsel and asked simply, "I need to know whether your client would be willing to include Fed Ex in the release under the terms you set forth. Please advise." Ex. 16 at NCC16. Plaintiff's counsel responded, "No, Plaintiff will want the Settlement Agreement and Release to make it clear that Plaintiff

reserves all claims against FedEx." *Id.* This was the ***only*** attempt made to settle the case on FXF's behalf before NCC exhausted the Policy limits. This is insufficient.

NCC also never investigated FXF's potential liability. Mr. Benson was the liability adjuster assigned to C&M's file, and despite identifying that FXF was a potential co-defendant and recommending NCC assess FXF's potential liability, there is no evidence that NCC conducted a liability investigation as to FXF. Ex. 11 at NCC1112-1113; Ex. 3 at 78:4-13; Ex. 12 at 16:14-18, 28:18-23. Even after FXF tendered a claim and NCC accepted the demand, NCC still failed to conduct a liability investigation. As Ms. Huston, the liability adjuster at that time, testified, she did not conduct an investigation. Ex. 10 at 12:7-9; 26:8-11; 29:22-30:1; 35:12-36:13. She repeatedly testified that she relied instead on FXF's counsel to conduct the investigation, *see, e.g., id.* at 10:19-25, 12:7-24, 16:7-10, 20:2-10, 28:18-22; 35:6-36:13, but this is improper because the liability insurer is solely responsible for determining authority to settle based on its assessment of liability.

Further, at its corporate deposition, NCC explained that it excluded FXF from the settlement because NCC believed FXF had a good case and would likely not be found liable. Ex. 3 at 76:7-77:18. Such reasoning, however, is found nowhere in the claim file NCC produced in this case. As Ms. Huston, Mr. Benson, and NCC's corporate representative testified, NCC should have documented an assessment such as this in the claim file. Ex. 10 at 17:2-11, 21:24-22:2, 37:15-18; Ex. 12 at 36:13-37:7, 41:2-13; Ex. 3 at 24:14-25:3, 59:8-16, 75:4-11, 76:18-77:18. The fact that NCC did not document this assessment supports that this is a post-hoc justification for NCC's failure to try to include FXF in any settlement. Indeed, the contemporaneous documentation from NCC's coverage counsel suggests that NCC was considering settling without FXF because it had doubts about whether FXF was an insured, not because it thought FXF had a good case and could likely avoid liability. *See* Ex. 14 at FedEx210.

Accordingly, under either standard, NCC improperly exhausted the Policy limits. FXF is thus entitled to summary judgment in its favor on NCC's Third Claim for Relief, and the court should declare that NCC was obligated to provide a continuing defense to FXF and to indemnify FXF in the Underlying Tort Suit, notwithstanding the purported exhaustion of its Policy limits.

## 4.      NCC BREACHED ITS OBLIGATION TO INDEMNIFY FXF

Because NCC had an ongoing obligation to indemnify FXF despite its exhaustion of the Policy limits, NCC breached this obligation when it failed to pay any portion of FXF's settlement in the Underlying Suit. The Policy unambiguously requires NCC to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." Ex. 4 at FedEx62. After NCC paid its Policy limits, it refused to participate in further settlement discussions in the Underlying Tort Action. This breached NCC's duty in the Policy to indemnify FXF. As such, the Court should grant summary judgment in FXF's favor as to liability for its First Counterclaim for breach of contract.

## 5.      NCC DOES NOT HAVE A RIGHT TO REIMBURSMENT

NCC is seeking reimbursement of the costs it paid for FXF's defense – a defense the Policy obligated NCC to provide FXF. In the Policy, NCC assumed the "duty to defend" FXF, its insured, against any "suit" seeking "damages because of "bodily injury" . . .  caused by an 'accident.'" *Id.* at FedEx62-63. The term "suit," is defined as a civil proceeding in which "[d]amages because of "bodily injury" . . . are alleged." *Id.* There is no dispute that the Underlying Tort Suit was a "suit" seeking "damages because of bodily injury." NCC's contractual obligation to defend FXF, as an insured, is plain and unambiguous. Missing from the parties' insurance contract, however, is any reference to NCC's alleged right of reimbursement

for its contractually-mandated defense expenditures. Accordingly, under Wyoming law, NCC's claim for reimbursement must fail.

Former Chief Judge William Downes considered and soundly rejected a nearly identical claim for reimbursement, under circumstances similar to those alleged by NCC, and the Tenth Circuit affirmed his decision. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 2008 WL 11334053, *6 (D. Wyo. Aug. 6, 2008), aff'd, 618 F.3d 1153, 1176 (10th Cir. 2010). In *Bartile*, EMC, the insurer, sought reimbursement of costs it had incurred in defending its insured on claims the court found were not covered under the EMC policy. Judge Downes recognized that the "Wyoming Supreme Court addressed the issue of defense cost recoupment in *Shoshone* ..." *Id.* In discussing *Shoshone*, the court noted that the Supreme Court had adopted the reasoning set out in *Am. States Ins. v. Ridco, Inc.*, 1996 WL 33401184 (D. Wyo. 1996), another Wyoming federal court case which determined that, while the insurer ultimately owed no duty to defend in the first instance, a reservation of rights letter did not create a contract allowing the insurer to recoup defense costs from its insureds. *Bartile*, at *6 (citing *Ridco*, 1996 WL 33401184 at *3) ("There is a strong public policy argument that insurers should not be entitled to recoup costs of defense from their insureds under a reservation of rights.").

In affirming the district court, the Tenth Circuit held that:

> Under Wyoming law, courts disfavor insurer's attempts to defend insureds while retaining the right to deny coverage and recoup defense costs at a later date. The insurer is not permitted to unilaterally modify and change policy coverage. [A] reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds.

*Bartile*, 618 F.3d at 1175 (citations and quotations omitted). The Tenth Circuit rejected EMC's reimbursement claim, finding, "[a]s an initial matter, the [] policies contain no provisions reserving EMC's right to recoup defense costs from Bartile." *Id.* at 1176. The Tenth Circuit also

23

rejected EMC's effort to distinguish *Shoshone* because the insurer in *Shoshone* sought reimbursement of noncovered claims even though there were covered claims for which the insurer undisputedly was required to pay defense costs. In spurning this distinction, the Tenth Circuit emphasized the Wyoming Supreme Court refused to allow reimbursement because a reservation of rights letter cannot unilaterally modify the insurance contract.

This legal tenet is equally applicable here. The Policy nowhere provides NCC a right to reimbursement of defense costs, as NCC itself has admitted. Ex. 3 at 53:13-18. The Policy states only that the "duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements." Ex. 4 at FedEx67. The Policy does not state that once the duty to defend ends, NCC can recoup any fees paid thereafter. Nor does NCC's reservation of rights letter or subsequent emails provide a basis for unilateral modification of the parties' insurance contract. The Wyoming Supreme Court and the Tenth Circuit Court of Appeals have settled this issue; there is simply no basis upon which NCC has a legal right to recoup its defense costs. Accordingly, the Court should grant summary judgment in FXF's favor on NCC's Fourth Request for Relief and declare, "None of the provisions in the Policy permit NCC to seek reimbursement from FedEx for defense costs and expenses NCC may have previously paid under its duty to defend relating to the Underlying Tort Suit," as set forth in FXF's Third Claim for Relief.

Even if the Court concludes the Policy's statement that the "duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements" allows NCC to recoup the fees it paid after exhausting the Policy limits, NCC is still not entitled to summary judgment on its request for reimbursement. As was shown in Section 3 above, NCC breached its obligations when it settled on behalf of less than all

insureds. Because NCC improperly exhausted its Policy limits, the Court should not permit NCC

to recover the fees it paid on FXF's behalf after the improper exhaustion.

## CONCLUSION

For the reasons stated herein, FXF requests the court enter judgment in its favor: (1) on

NCC's First, Third and Fourth Claims for Relief; (2) as to liability for FXF's First Counterclaim;

and (3) declare FXF is an insured, NCC has a duty to defend and indemnify FXF, despite

exhaustion of the Policy Limits, and NCC is not entitled to reimbursement of defense fees and

costs.

Respectfully submitted,

/s/ *Susan L. Combs*
Susan L. Combs, P.C. (WSB #6-4023)
HOLLAND & HART LLP
P.O. Box 68
Jackson, WY 83001
Telephone:  (307) 734-4518
slcombs@hollandhart.com

Jose A. Ramirez (Admitted Pro Hac Vice)
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Ste. 500
Greenwood Village, CO 80111
Telephone:  (303) 290-1600
jramirez@hollandhart.com

Kathleen K. Custer (Admitted Pro Hac Vice)
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO  80202
Telephone:  303-295-8060
Fax:  303-223-3398
KKCuster@hollandhart.com

Attorneys for Defendant
FedEx Freight, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served

via CM/ECF to the following on February 23, 2018:

Stuart R. Day
Ryan J. Schwartz
Williams, Porter, Day & Neville, P.C.
P.O. Box 10700
Casper, WY  82602
*sday@wpdn.net*
*rschwartz@wpdn.net*

Scott W. McMickle (Admitted *Pro Hac)*
McMickle Kurey & Branch, LLP
200 South Main Street
Alpharetta, GA  30009
*swm@mkblawfirm.com*

Attorneys for Plaintiff

/s/ *Susan L. Combs*
Susan L. Combs, P.C.

10692151_3

26